IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUSTIN LEE TIPTON,

    Plaintiff,

v.                                                                            2:14-cv-00508-MCA-LF

LANCE PILE, TORRI SANDOVAL,
ECIPIO LUCERO, NANCY LUEHAS,
NATHAN HUNT, JOAN MARTIN,
CINDY LNU, JAMIE LNU,

    Defendants.

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON
MOTION FOR SUMMARY JUDGMENT ON THE *MARTINEZ* REPORT

THIS MATTER is before the Court on defendants Ecipio Lucero and Tori Sandoval's motion for summary judgment on the *Martinez* report, filed on June 12, 2015. Doc. 22. Plaintiff Justin Lee Tipton filed his response on July 6, 2015 (Doc. 24), and defendants filed their reply on July 17, 2015 (Doc. 25). Defendants filed an appendix to the *Martinez* report and a supplement to their motion on September 14, 2015. Doc. 29. Tipton filed his response to this supplement on September 24, 2015. Doc. 30. The Honorable Chief Judge M. Christina Armijo referred this case to me to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 28. Having reviewed the submissions of the parties and the relevant law, and being otherwise fully advised, I recommend that the Court grant defendants Lucero and Sandoval's motion for summary judgment (Doc. 22), and that it dismiss Tipton's section 1983 civil rights claim against defendants Lucero and Sandoval with prejudice.

**Introduction**

In his sworn complaint, Tipton, an inmate at the Curry County Adult Detention Center, alleges that defendants denied him "proper medical attention" and subjected him to "cruel and unusual punishment" by failing to timely test and treat him for methicillin-resistant staphylococcus aureus ("MRSA"). Doc. 1 at 4–6. Tipton alleges that, between September 2013 and December 2013, medical providers at the jail[1] erroneously diagnosed and treated him for infected acne instead of MRSA—causing him to get a "deep infection" that resulted in scarring and pain, and required several rounds of antibiotics to treat. Doc. 1 at 4–7. He further claims that defendants failed to address his medical requests and grievances during this time period. Doc. 1 at 5–6.

Tipton initially named eight individual defendants. Doc. 1. The Court *sua sponte* dismissed claims against six of the defendants for failure to state a claim (Doc. 15), and ordered a *Martinez* report on the claims against the remaining defendants—Tori Sandoval, Administrator of the Curry County Detention Center, and Ecipio Lucero, Deputy Administrator of the Curry County Detention Center (Doc. 19).

**I.   Standard of Review**

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] A third-party contractor, Presbyterian Healthcare Services, who subcontracted with Correctional Health Care Companies, provided medical care at the Curry County Adult Detention Center during the relevant time period. Doc. 22 at 2.

247–48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. A "genuine" dispute exists where the evidence is such that a reasonable fact-finder could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record," and such materials must be in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(1)(A), (2). Parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The moving party need not negate the nonmovant's claim, but instead may show that "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted).

The nonmoving party cannot rely upon conclusory statements to defeat summary judgment. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett*

*v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). Rather, the nonmoving party must go beyond the allegations and denials of the pleadings and "designate 'specific facts'" showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Anderson,* 477 U.S. at 256; *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). If the nonmoving party fails to properly address the movant's properly supported assertions of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

When considering a motion for summary judgment, a district court must view the facts in the light most favorable to the party opposing summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*). The Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue of material fact exists, requiring a trial. *Anderson*, 477 U.S. at 249. Further, the Court cannot decide issues of credibility. *Id.* at 255.

For purposes of summary judgment, the Court treats a prisoner's complaint as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). The Court also treats a *Martinez* report as an affidavit. *Id.* The Court may use the report and the supporting documents in determining whether to grant summary judgment if the report's statements are based on personal knowledge and sworn under penalty of perjury. *Id.*; *see also* Doc. 19 at 1 (putting parties on notice that the report may be used in deciding whether to grant summary judgment on plaintiff's claims, whether by motion or *sua sponte*). The Court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when they are in conflict with sworn pleadings or affidavits. *Hall*, 935 F.2d at 1109. As is true with all affidavits, statements of mere

belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006). "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. However, "it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

## II. Facts

On September 9, 2013, Tipton submitted a Patient Health Services Request Form, reporting an infected face, for which he had received erythromycin prior to his incarceration. BLF 65.[2] Curry County Adult Detention Center medical providers ("medical providers") diagnosed Tipton with acne, and two days later began treating him with benzoyl peroxide cream. BLF 128. On September 27, 2013, Tipton submitted a second Patient Health Services Request Form, reporting that the benzoyl peroxide was not working. BLF 64. A medical provider saw Tipton again on September 28, 2013. *See* Doc. 24 at 1; BLF 85 (provider progress note, stating that Tipton complained of "acne which is infected on R[ight] cheek").[3] Although it appears that providers planned to treat Tipton with erythromycin, after discovering that this medication was "non-preferred," medical providers decided to continue treating Tipton with benzoyl peroxide. BLF 85. The Medication Administration Record for September 2013 indicates medical providers diagnosed Tipton with acne and treated him with benzoyl peroxide from September 11, 2013 through September 30, 2013. BLF 128.

On October 6, 2013, Tipton submitted two Patient Health Services Request Forms. In the first he complained of "an infection in my face Think I have a blood infection Have been

---

[2] The "BLF" number refers to the Bates stamp numbers on the documents defendants submitted in the *Martinez* report.

[3] This document is not dated. Defendants neither admit nor deny that BLF 85 documents the provider visit which Tipton states occurred on September 28, 2013. Doc. 25 at 2.

breaking a fever my face is getting red and hard can't even lay down or nothing." BLF 63. In the second he stated he needed "to get some different medication for face benzoil [*sic*] peroxide is only making it worse some parts are infected." BLF 60. The *Martinez* report also contains two Patient Health Services Request Forms with unknown dates: one in which Tipton asks why he has not yet received the antibiotics which were prescribed on his September 28, 2013 medical visit, BLF 62, and one with an illegible date that says he needs to see a doctor ASAP for his worsening facial infection, BLF 61. An LPN signed each of these four request forms, noting in the "disposition" sections that Tipton was "seen" by medical on October 7, 2013.[4]

Tipton submitted an undated Patient Health Services Request Form stating he had an infection which "might be staff or just a blood infection; have fought a fever several times can't hardly lay down or even open my mouth." BLF 58. The disposition section of this form, dated October 13, 2013, shows that an LPN spoke to Tipton in the pod. *Id.* The LPN's notes say that

---

[4] Tipton denies being seen in medical on October 7, 2013, claiming that "nowhere in medical file does it show inmate was seen." Doc. 24 at 2. Tipton seems to argue that the lack of separate paperwork showing his vital signs and containing medical progress notes is proof that he was not seen. *Id.* However, he offers no evidence in support of this assertion. There is no evidence that these separate medical records were made for every visit. Tipton further alleges a conspiracy to "hide and cover this situation," *id.* at 5, and states that "clearly records w[]ere falsified stating I've been seen and never had MRSA," *id.* at 8. Tipton's allegations of conspiracy and falsification of records are conclusory statements, unsupported by any admissible evidence. While the Court notes that the medical records are not a paradigm of clarity—often lacking dates and sometimes containing illegible notations—there is no admissible evidence before the Court which would allow a "reasonable fact-finder" to conclude that the medical records have been falsified.
  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal citations and quotation marks omitted). "Unsupported conclusory allegations . . . do not create a genuine issue of fact." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004).
  However, even if the Court were to accept Tipton's conclusory allegations as true, he still would lose on summary judgment, as there is no evidence that defendants Sandoval and Lucero acted with "deliberate indifference." *See* discussion *infra*.

Tipton stated he wanted a prescription for benzoyl peroxide cream, and that the LPN put a "[c]all in to provider." *Id*.

On October 18, 2013, Tipton submitted two separate Curry County Detention Center Inmate Request Forms, which he marked as "grievances." BLF 53, 56.[5] According to defendants, these grievances were routed to medical, as was their policy. Doc. 22 at 3, 5; BLF 143, 178. Tipton's first grievances states: "Have been putting in medical slips repeatedly and am not getting any response now my problem has gotten worse and become infected am requesting immediate medical attn. in a lot of pain." BLF 53. The bottom of this grievance has a notation dated October 22, 2013 by Reyna Falcon, RN, stating that Tipton was "seen in med." BLF 53.[6] A provider's order dated October 22, 2013 shows that medical providers diagnosed Tipton with "cystic acne" and prescribed Cephalexin to treat it.[7] BLF 84. Tipton began receiving Cephalexin on October 23, 2013. *See* BLF 127 (Medication Administration Record). Tipton's second grievance states: "am being denied proper medical care have an infection and is getting worse am in a lot of pain please see to it that I get some antibiotics please." BLF 56. The bottom of this grievance has an undated notation by Deedra Brockmeier, LPN, stating merely that "Patient is on medication per provider's orders." *Id*.

---

[5] BLF 50 and BLF 56 are two copies of the same grievance. In their motion for summary judgment, defendants state that this grievance was submitted on or about October 10, 2013. Doc. 22 at 3. Tipton states in his response that the grievance was filed on October 18, 2013. Doc. 24 at 3. The document itself appears to confirm Tipton's assertion that he filed it on October 18, 2013. *See* BLF 50, 56. If, however, Tipton filed this grievance on October 10, 2013, then he was assessed by a medical provider within three days of filing the grievance. *See* BLF 58 (showing that Tipton was seen in the pod by an LPN).

[6] Tipton again denies being "seen in med," arguing that it "does not show anywhere in medical file." Doc. 24 at 3. As discussed in footnote 4, *supra*, Tipton's argument that documents have been falsified is conclusory and not supported by any admissible evidence.

[7] Cephalexin is an antibiotic used to treat "a wide variety of bacterial infections." http://www.webmd.com/drugs/2/drug-11757/cephalexin-oral/details (accessed on February 24, 2016)

On October 26, 2013, Tipton saw a medical provider (CNP), who noted that Tipton had a "very infected area" on both lower cheeks. BLF 83. The medical provider added Benadryl and Bactrim—another medication used to treat bacterial infections—to Tipton's medication regimen.[8]  BLF 83. The medical provider also instructed Tipton not to touch or scratch his face, and to wash his hands. *Id.*

Tipton submitted an undated Health Services Request Form stating that his face was "very painful" and that antibiotics are "due in 2 days and have not been helping." BLF 47. The disposition section, dated November 4, 2013, indicates that Tipton was put on a list to see a medical provider. *Id*. Tipton saw the medical provider on November 9, 2013. BLF 82. The provider's progress notes state that Tipton was "being seen for acne continuing. This patient has been seen several times and treated for acne with 2 antibiotics and face wash." *Id*. The provider's progress notes further indicate that "Mr. Tipton has been told repeatedly to quit picking at his face and he continues to pick at acne causing it to get infected. He refuses to use face wash for acne." *Id.* The provider diagnosed Tipton with "cystic acne vulgaris with swelling to face," and noted that Tipton's jaw "has some drainage" and that Tipton had previous scarring. *Id.* The provider prescribed Clindamycin, benzoyl peroxide and Benadryl. *Id.* Tipton began receiving these medications on November 10, 2013. BLF 126.

Tipton claims that the antibiotics were ineffective and that—between November 9, 2013 and November 18, 2013—he asked several times to be tested for staff and MRSA, but these requests were denied. Doc. 24 at 5. However, there is no documentation in the record of these

---

[8] According to the affidavit of Reyna Falcon, RN, one of the medical providers at the Curry County Detention Center, Bactrim often is prescribed when MRSA is suspected. BLF 180.

requests.[9]  Tipton states that he finally was pulled from his pod due to swelling in his face, taken to medical and tested for MRSA.  *Id.*  There are no lab tests in the record showing MRSA testing; however, the Medication Administration Record for November 2013 does contain a notation on the bottom indicating a diagnosis of MRSA.  BLF 126.  In addition, Reyna Falcon's amended affidavit states that "Mr. Tipton had tested positive for MRSA."  BLF 181.  Therefore, there is admissible evidence in the record showing that Tipton was diagnosed with MRSA sometime in November 2013.

On November 25, 2013, medical providers prescribed Tipton another course of Bactrim.  BLF 81.  On December 5, 2013, a medical provider prescribed Tipton SMZ/TMP—a generic version of Bactrim, an antibiotic used to treat bacterial infections.[10]  BLF 80.

### III.   Analysis

Tipton's assertion that he was denied proper medical care is a claimed violation of the Eighth Amendment.  "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To prevail on an Eighth Amendment medical indifference claim, a plaintiff must prove two elements:  (1) objectively, that his medical needs were sufficiently serious; and (2) subjectively, the prison official acted with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

---

[9] Tipton alleges that these documents were "deliberately removed" from his file in an attempt to cover up his MRSA diagnosis.  Doc. 30 at 1.  As discussed in footnote 4, *supra*, Tipton's allegations of conspiracy and falsification of records are conclusory and are not supported by any admissible evidence in the record.

[10] Although Tipton claims that the provider prescribed SMZ/TMP because the Bactrim was not working, Doc. 24 at 6, SMZ/TMP is actually a generic version of the drug Bactrim and is used to treat a wide variety of bacterial infections.  http://www.webmd.com/drugs/2/drug-64007/smz-tmp-ds-oral/details (accessed on February 23, 2016).

### A. Objective Element

To prove an Eight Amendment violation, a prisoner must produce objective evidence showing that his medical need was "sufficiently serious." *Farmer*, 511 U.S. at 834. "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citations and internal quotation marks omitted). A delay in medical treatment only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

### i. Tipton fails to show defendants denied or delayed his medical care.

Viewing the evidence in the light most favorable to Tipton, no reasonable fact-finder could conclude that Tipton's medical care was denied or delayed. While Tipton disagreed with the medical diagnosis and treatment he received, the record shows medical staff saw him repeatedly between September 2013 and December 2013, and that he was timely treated. "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Ramos*, 639 F.2d at 575.

At best, Tipton's allegations raise a claim of medical malpractice against the medical providers, rather than an Eighth Amendment claim against defendants.  In *Estelle*, the Supreme Court held that an inmate plaintiff failed to allege a cognizable claim where prison doctors saw him multiple times over a three-month period for back pain; diagnosed him with a lower back strain and prescribed bed rest, muscle relaxants, and pain relievers, rather than ordering a diagnostic x-ray which could have led to a different diagnosis and relief of his pain.  429 U.S. at 106–07 ("A medical decision not to order an X-ray or additional diagnostic techniques or forms of treatment is indicated as a classic example of a matter for medical judgment.  At most it is medical malpractice," not an Eighth Amendment violation.)  Similarly here, medical providers saw Tipton multiple times over a four-month period, diagnosed and treated him for acne and prescribed face cream, antihistamines, and several oral antibiotics.  The medical providers' failure to diagnose and treat him for MRSA sooner is, at most, medical malpractice, and, as in *Estelle*, does not rise to the level a cognizable Eighth Amendment claim.

While Tipton argues that the medical providers were negligent in failing to timely test and treat him for MRSA, the record shows that medical providers were regularly treating him—diagnosing him over the course of his medical visits with acne, infected acne, acne vulgaris, and MRSA.  Tipton proffers no evidence showing that the diagnosis of MRSA was untimely, or that these earlier diagnoses were incorrect or negligent.  The fact that Tipton eventually tested positive for MRSA sometime in November 2013 does not prove that he had MRSA in September or October of 2013.  Even assuming that Tipton did have MRSA in September or October of 2013, this does not show that the medical provider's diagnosis of acne during this time period was negligent, and it certainly is insufficient to show the deliberate indifference necessary to allege a cognizable claim under the Eighth Amendment.

Finally, to prevail on his claim, Tipton must show that defendants' delay in meeting his objectively serious medical need caused him "substantial harm." *See Mata,* 427 F.3d at 751. Tipton offers no evidence—circumstantial or otherwise—showing that defendants Lucero or Sandoval caused any denial of, or delay in, Tipton's medical care. The bulk of the written requests Tipton submitted for medical care were Patient Health Service Request Forms, which were submitted directly to and handled by the third party medical provider. The written grievances—both dated October 18, 2013—were the first written documents bringing the issue to the attention of defendants Lucero and Sandoval.[11] Both defendants state in sworn affidavits that it is their policy to refer complaints about medical care to the medical provider, and that they do not "make judgments or decisions about the type of medical care or treatment to be given any inmate. [They] rely on the judgment of the medical provider." BLF 143, 178. Four days after Tipton submitted his written grievances, he was seen by a medical provider and prescribed antibiotics. *See* BLF 53, 84. There is no evidence showing defendants Lucero or Sandoval delayed or denied Tipton medical care. Instead, the record shows that defendants promptly referred Tipton to the medical provider and relied on that third party medical provider to make treatment decisions.

    ii.    **Tipton fails to show that any alleged delay caused substantial harm.**

Tipton submits no evidence showing that he had MRSA in September or October 2013. Tipton submits no proof that he did not have acne during these months, or that the treatment he

---

[11] Defendant Sandoval's affidavit states that Tipton made oral complaints to her about his face "[d]uring rounds" and that she did "not know anything about his condition, but . . . would always refer Mr. Tipton to medical for any complaints that he had or explain that he needed to fill out a medical request form." BLF 143. Defendant Lucero's affidavit also states that he received oral complaints from Tipton about his face, and that he told him to "put in a medical request form or to follow-up with the medical provider." BLF 178. But even if Tipton filed his first grievance on October 10, 2013 rather than on October 18, 2013, the record shows that Tipton was seen by a medical provider within three days of filing his grievance. *See* BLF 58 and footnote 5, *supra*.

received was in any way negligent or incorrect. Tipton proffers no evidence that if medical providers had tested and treated him for MRSA sooner, his medical outcome would have been any different. As such, Tipton fails to show a causal link between the alleged delay and his claimed harms.

### B. Subjective Element

Even assuming that Tipton proffered enough evidence to survive summary judgment on the objective prong, there is simply no evidence in the record—much less evidence which creates genuine issues of material fact for trial—to support the subjective prong of the medical indifference claim. "A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety." *Garrett,* 254 F.3d at 949 (citation and quotation omitted). The subjective prong requires evidence of a prison official's culpable state of mind. *Mata*, 427 F.3d at 751 (citing *Estelle*, 429 U.S. at 106). Deliberate indifference is analogous to criminal recklessness, "which makes a person liable when [he] consciously disregards a substantial risk of serious harm." *Id.* at 752; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). Thus,

> [t]he subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference.

*Mata*, 427 F.3d at 751; *see also Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) ("To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded the risk, by failing to take reasonable measures to abate it.'"). "[D]eliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for

treatment." *Sealock*, 218 F.3d at 1211; *see also Estelle*, 429 U.S. at 104–05 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care"). "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self,* 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 842).

To meet the subjective element of the deliberate indifference test in this case, Tipton must cite to facts supporting an inference that defendants Lucero and Sandoval knew about and disregarded a "substantial risk of harm" to his health or safety. *See Mata,* 427 F.3d at 752.[12]

### i. Tipton fails to show that defendants knew of an excessive risk.

Tipton argues that defendants knew about the seriousness of his condition because they admitted it in their affidavits and took pictures of his face. Doc. 24 at 6. He further argues that defendants had a duty to "investigate" his grievances about lack of adequate medical care. Doc. 24 at 7.

These arguments fail to show that defendants knew of an excessive risk. Tipton presented with acne. The medical providers who repeatedly assessed and treated Tipton diagnosed him with acne, or infected acne. This is not the type of malady that generally poses an "excessive risk to inmate health or safety." *Garrett,* 254 F.3d at 949.

If defendants had reviewed Tipton's medical treatment records, as he claims they had a duty to do, their review of those records would have shown that Tipton was receiving treatment,

---

[12] "[V]icarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009). For a supervisor to be liable under § 1983 "there must be an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation and quotation omitted).

and that medical providers were responsive to Tipton's requests.[13] Furthermore, Tipton presents no evidence showing that defendants had a duty to override medical providers' decisions concerning his medical diagnosis and treatment. Both defendants stated in sworn affidavits that it was their policy to refer complaints about medical care to the medical provider and to "rely on the judgment of the medical provider" to decide on the type of medical care and treatment to be rendered. BLF 143, 178.

### ii. Tipton fails to show that defendants disregarded an excessive risk.

Finally, Tipton presents no evidence that defendants consciously or recklessly disregarded *any* risk to his health or safety, much less an excessive risk. Tipton presents no evidence showing defendants prevented him "from receiving treatment or den[ied] him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. Here, defendants received Tipton's grievances and promptly referred him to a medical provider. Because there is no evidence of deliberate indifference on the part of defendants, the Court should grant summary judgment in their favor.

---

[13] Even if Tipton's conclusory allegation about records being falsified or destroyed were true, the defendants would have reasonably relied on the medical records created by a third party medical provider, and these records show that Tipton was being seen and treated for his medical conditions. Therefore these allegations do not show that defendants would have known of any excessive risk had they reviewed his medical treatment records.

**IV.     Recommendation**

For the reasons stated above, I recommend that the Court grant defendants' motion for summary judgment and dismiss plaintiff's section 1983 civil rights claim against defendants Lucero and Sandoval with prejudice.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge